**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RYAN JAMES HOWARD,
Citizens Bank Park
One Citizens Bank Way
Philadelphia, PA 19148

                        Plaintiff,

v.

AL JAZEERA AMERICA, LLC, LIAM JAMES
COLLINS, and DEBORAH DAVIES,

                        Defendants.

Civil Action No. _____

ECF Case

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiff Ryan James Howard, as and for his Complaint against Defendants Al Jazeera America, LLC ("Al Jazeera" or "Al Jazeera America"), Liam James Collins, and Deborah Davies (collectively, "Defendants"), by and through undersigned counsel, hereby alleges as follows:

**NATURE OF THE ACTION**

1.      This is a suit to redress an unjust injury to the public image and reputation of Major League Baseball ("MLB") player Ryan James Howard, which have been damaged by outrageously false and defamatory statements recklessly published by Al Jazeera. As detailed below, Defendants publicly smeared Mr. Howard with false and unsubstantiated allegations of performance-enhancing drug use, based on uncorroborated accusations by a third party that had been unequivocally recanted *prior* to Defendants' publication.  Defendants knew full well that their "source" had recanted his scandalous and untrue allegations against Mr. Howard but, abdicating all journalistic responsibilities, Defendants nonetheless chose to publish their

1

defamatory story in an attempt to stir scandal and increase Al Jazeera's low ratings, no matter the cost to Mr. Howard.

## THE PARTIES

2.      Plaintiff Ryan James Howard is a citizen and resident of Florida, and the starting first baseman for the Philadelphia Phillies MLB team.

3.      Defendant Al Jazeera America, LLC is a Delaware corporation with its headquarters and principal place of business at 435 Hudson Street, New York, New York 10014, and with an office at 1200 New Hampshire Avenue, NW, Washington, DC 20036.

4.      Defendant Deborah Davies is a reporter employed, upon information and belief, by Al Jazeera America in Washington, D.C.  Upon information and belief, Davies is a citizen of the United Kingdom and a resident of Washington, D.C.

5.      Defendant Liam James Collins is, among other things, a former hurdler, would-be bobsledder, and bankrupt real-estate promoter who is banned by British authorities from directing any business until 2027 after being found to have taken substantial sums of money from investors with the promise of high returns on property investments and no reasonable expectation that they would ever be able to meet the repayments promised to investors.  Upon information and belief, Collins is a citizen and resident of the United Kingdom.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Al Jazeera pursuant to § 13-422 of the District of Columbia Code because it is a domiciliary of the District of Columbia.  This Court

also has personal jurisdiction over Al Jazeera pursuant to § 13-423 of the District of Columbia Code by virtue of its: (i) transacting business within the District of Columbia; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; (iii) causing tortious injury in the District of Columbia by acts committed outside the District of Columbia while regularly doing business within, engaging in persistent conduct within, and deriving substantial revenue from goods consumed and services rendered within the District of Columbia; and, upon information and belief, (iv) having an interest in, using, or possessing real property within the District of Columbia.

8.     This Court has personal jurisdiction over Davies pursuant to § 13-422 of the District of Columbia Code because, upon information and belief, she is a domiciliary of the District of Columbia.  This Court also has personal jurisdiction over Davies pursuant to § 13-423 of the District of Columbia Code by virtue of her: (i) transacting business within the District of Columbia and maintaining a principal place of business in D.C.; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; (iii) causing tortious injury in the District of Columbia by acts committed outside the District of Columbia while regularly doing business within, engaging in persistent conduct within, and deriving substantial revenue from goods consumed and services rendered within the District of Columbia; and, upon information and belief, (iv) having an interest in, using, or possessing real property within the District of Columbia.

9.     This Court has personal jurisdiction over Collins pursuant to § 13-423 of the District of Columbia Code by virtue of his: (i) transacting business within the District of Columbia; (ii) causing tortious injury in the District of Columbia by acts committed within the District of Columbia; and (iii) causing tortious injury by acts committed outside the District of

Columbia while deriving substantial revenue from goods consumed and services rendered in the District of Columbia.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred herein, and because all Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### *Plaintiff Ryan James Howard*

11.     Mr. Howard is a professional baseball player and the starting first baseman for the Philadelphia Phillies.  Mr. Howard has played for the Phillies for his entire MLB career.

12.     Mr. Howard is a graduate of Lafayette High School, in Wildwood, Missouri and attended Missouri State University.  He was a walk-on to Missouri State's baseball team, but was later awarded a scholarship and became a permanent fixture in the lineup.  Missouri State retired Mr. Howard's number on December 18, 2010, and he will be inducted into its Hall of Fame in February 2016.

13.     Mr. Howard was drafted by the Phillies in the fifth round of the 2001 MLB draft, and was first called up to the major leagues in September 2004.  He rapidly achieved great on-field success, winning the National League Rookie of the Year Award in 2005, his first full season in the major leagues, and the National League Most Valuable Player Award in 2006.  Mr. Howard is one of only three players in MLB history to win the Rookie of the Year award and the Most Valuable Player award in consecutive seasons.

14.     In 2006, in addition to being named MVP, Mr. Howard was selected to his first All-Star team and won the annual Home Run Derby.  Mr. Howard also received the National League Hank Aaron Award, which is awarded to the best hitter in the league, as voted on by

baseball fans and members of the media, and he won the Silver Slugger Award as the best offensive player at the first base position.  He was further named both The Sporting News Player of the Year and the Player of the Year in the 2006 Players Choice Awards balloting.  The Philadelphia Sports Hall of Fame awarded Mr. Howard the Pride of Philadelphia Award for the year.

15.     Mr. Howard's 2006 home run total made him one of only 27 MLB players in history to have hit more than 50 home runs in a season.  His 58 home runs remain the highest single season total for any major league player since 2001, and the highest total of all time for the Phillies.

16.     In 2009, Mr. Howard became only the fourth player in MLB history to amass at least 135 runs batted in and 45 home runs in four consecutive seasons.  Mr. Howard was again named to the National League All-Star team in both 2009 and 2010.  In 2014, Mr. Howard became the MLB record-holder for having reached 1,000 runs batted in in the shortest career timespan.

17.     Mr. Howard's achievements have not only earned him individual accolades, but also have contributed to great team success for the Phillies.  In 2007, the Phillies made the playoffs for the first time in 14 years, winning their first of five consecutive National League East titles.  Mr. Howard was an instrumental part of the Phillies winning the 2008 World Series—only the second in franchise history—and he was named the most valuable player of the 2009 National League Championship Series.  In 2010, Philadelphia sports fans picked the Phillies' 2008 World Series win as the greatest moment in Philadelphia sports history.

18.     In addition to his outstanding athleticism, Mr. Howard is known for his willingness to give back to the community.  He hosts numerous charity events in Philadelphia and has founded multiple charities aimed at helping youth.

19.     In 2009, Mr. Howard formed the Ryan Howard Family Foundation ("Family Foundation"). The Family Foundation provides grants to select nonprofits that are aligned with its mission to improve the lives of disadvantaged youth and families, with focus on programs that advance education, nutrition, physical fitness, and socio-economic status. For example, in June 2009, the Family Foundation announced plans to revitalize 87 acres of green space in the Hunting Park community of Philadelphia, and in 2011, the Family Foundation pledged more than $1.1 million in Adidas apparel to Philadelphia high schools.

20.     Mr. Howard and his wife also founded the Ryan Howard Big Piece Foundation ("Big Piece Foundation"), a Section 501(c)(3) organization dedicated to improving the lives of children by promoting academic and athletic development.  The Big Piece Foundation's goal is to engage students in the essential area of literacy, leading them on a path to a brighter future.

21.     For example, during the 2013-2014 school year, the Big Piece Foundation partnered with Vare-Washington Elementary School in Philadelphia to complete Ryan's Reading Challenge, a kindergarten through third-grade literacy program challenging students to read 20 minutes a day, seven days a week.  In conjunction with the challenge, the Big Piece Foundation awarded the school a $75,000 academic grant to build Howard's Homeroom, an interactive, baseball-themed reading room filled with hundreds of books, computers, iPads, and comfortable reading nooks.

22.     Based on Mr. Howard's reputation and the foundations' missions, the Big Piece Foundation and the Family Foundation have numerous corporate partners, including Shop-Rite,

Citizens Bank, Mitchell & Ness, Subway, American Broadcasting Company, Apollo Jets, The Cake Boss, ICONIX, Moroccan Hair Oil, and Morton's Steakhouse.

23.     Mr. Howard and his wife also have created the "Little Rhino" series of children's books, which teach children life lessons, such as the importance of school work, teamwork, and acceptance.  The pair has hosted reading events for children at the Phillies' stadium, Citizens Bank Park.

24.     Due to his reputation as a talented and widely respected athlete, Mr. Howard has endorsed and acted as spokesman for various companies, including Scholastic Publishing, Sony PlayStation, Subway restaurants, State Farm Insurance, Coca-Cola Powerade, Verizon, Rawlings, Marrucci Bats, Adidas, Under Armour, New Balance, Topps, The Walt Disney Company, WePlay, LoJo Sports & Memorabilia, Mitchell Marketing, and Franklin Sports.  Mr. Howard also has appeared on the cover of the 2008 video game MLB 08: The Show and has made cameo appearances in various television shows, including "It's Always Sunny in Philadelphia," "The Office," and "Entourage."  Hallmark has even made a special edition Ryan Howard ornament.

### *Defendant Al Jazeera America*

25.     Al Jazeera Media Network is a Qatar-based news network that, upon information and belief is owned or funded by the government of Qatar.  Originally launched as an Arabic-language cable channel, Al Jazeera Media Network has expanded into a multi-channel network.

26.     In 2013, Al Jazeera Media Network spent $500 million to buy Current TV and start an American channel—Al Jazeera America.  However, Al Jazeera America has been "plagued with low ratings" in the "nearly two years since its launch."  (A true and correct copy

of the article found at http://www.thewrap.com/al-jazeera-america-mess-low-ratings-distribution-woes-still-dog-embattled-network/ is attached hereto as **Exhibit A**).

27.     In or about May 2015, Al Jazeera America suffered "an exodus of top executives" who left citing "a culture of fear" and a "newsroom in total 'disarray behind the scenes.'" (A true and correct copy of the article found at http://www.nytimes.com/2015/05/06/business/media/al-jazeera-network-in-turmoil-is-now-the-news.html?_r=0 is attached hereto as **Exhibit B**).  In fact, as a result of this exodus, as well as a $15 million discrimination lawsuit, Al Jazeera America "nearly imploded," and then-CEO Ehab Al Shihabi was removed.  (A true and correct copy of the article found at http://www.ft.com/intl/cms/s/0/7bef7300-6304-11e5-a28b-50226830d644.html#axzz3vclM4j1F is attached hereto as **Exhibit C**).

28.     Since Al Shihabi's removal, Al Jazeera America has continued to face difficulties. In August 2015, it parted ways with its Senior Vice President of News Output.  (A true and correct copy of the article found at http://www.huffingtonpost.com/entry/mary-caraccioli-al-jazeera-america_55df7ce7e4b0b7a963386b6a is attached hereto as **Exhibit D**).   And in September 2015, Al Jazeera America refused to voluntarily recognize a union drive announced by its digital employees.   (A true and correct copy of the article found at http://www.ibtimes.com/al-jazeera-america-will-not-recognize-union-nlrb-elections-underway-2118695 is attached hereto as **Exhibit E**).

29.     As of September 28, 2015, Al Jazeera America continued to trail far behind its competitors, and its new CEO, Al Anstey, was quoted as admitting, "[t]he reputation is low." (**Exhibit C**).

30.     In November 2015, Al Jazeera America was forced to suspend David W. Harleston as the company's general counsel, after it was revealed that he was not licensed to

practice law.  (A true and correct copy of the article found at http://www.nytimes.com/2015/11/09/business/media/general-counsel-for-al-jazeera-america-appears-to-be-unlicensed.html?_r=0 is attached hereto as **Exhibit F**).

31.     Al Jazeera America features what it calls its "Investigative Unit."  Upon information and belief, Al Jazeera America's Investigative Unit is based at 1200 New Hampshire Avenue, NW, Washington, DC 20036 and purports to investigate stories throughout the United States and the world.  According to its website, "Al Jazeera's Investigative Unit does not report the news, it makes the news."  (*See* **Exhibit G**, a true and correct copy of the web page found at http://www.aljazeera.com/investigations/).  The website further boasts that "the stories we have produced have led the global news agenda."  (*Id.*)

### *Defendant Deborah Davies*

32.     Deborah Davies holds herself out as a British reporter working for Al Jazeera in Washington, D.C., as part of Al Jazeera's Investigative Unit.  Upon information and belief, Deborah Davies was the lead reporter involved in Al Jazeera's program entitled "The Dark Side: Secrets of the Sports Dopers."

### *Defendant Liam James Collins*

33.     Liam James Collins is a known fraudster and publicity-seeker who gained fame in 2009 as a semi-finalist on Britain's Got Talent as part of the dance duo "Faces of Disco."  Collins also has sought publicity to raise money for a supposed attempt at joining an Olympic bobsled team, as well as for a never-materialized bid to buy Michael Jackson's Neverland Ranch.

34.     More infamously, in 2012, Collins and his business partner declared bankruptcy after their real estate investment scheme was exposed and investors lost millions.  Following an investigation by Britain's Insolvency Service's Public Interest Unit into Collins' business

activities, Collins and his partner were each given 14-year bankruptcy restriction orders barring them from directing companies within the United Kingdom.  The maximum ban is 15 years.  British authorities found that Collins and his partner had amassed nearly a million pounds from investors "'with the promise of high returns on property investments with no reasonable expectation that they would ever be able to meet the repayments promised to investors.'"  (A true and correct copy of the article found at http://www.thisismoney.co.uk/money/celebritymoney/article-2409740/Britains-Got-Talent-star-Liam-Collins-handed-bankruptcy-ban-duping-investors-property-scam.html is attached hereto as **Exhibit H**).

35.     Most recently, Collins made news for busking in Glasgow dressed as Iron Man, in a purported scheme to raise money for his wedding.  (*See* **Exhibit I**, a true and correct copy of the article found at  http://www.thescottishsun.co.uk/scotsol/homepage/news/5441426/Iron-Moan.html).

### *The Dark Side*

36.     On Sunday, December 27, 2015, at 9:00 p.m. EST, Al Jazeera aired a program on its television network entitled "The Dark Side: Secrets of the Sports Dopers" ("The Dark Side").  (A true and correct video copy of the program, **Exhibit J** hereto, is available at the Court's request and the notice of filing is attached hereto).  In addition, no later than December 27, 2015, Al Jazeera posted on its website a news article describing "The Dark Side" and including an embedded link to a video of the full program.  In this news article, Al Jazeera describes "The Dark Side" as an "investigation rais[ing] questions about whether sports heroes are linked to performance-enhancing drugs."  (A true and correct copy of the article found at

http://www.aljazeera.com/news/2015/12/dark-side-secrets-sports-dopers-151227133355144.html
is attached hereto as **Exhibit K**).

37.     On December 26, 2015, in advance of its televised airing of "The Dark Side," Al Jazeera posted a video of the full program on YouTube and provided the full program to The Huffington Post, which published an article with an embedded link to the full program on Saturday, December 26, 2015.   (A true and correct copy of the article found at http://www.huffingtonpost.com/entry/peyton-manning-human-growth-hormone_567f16e4e4b0b958f6599440 is attached hereto as **Exhibit L**).

38.     In "The Dark Side," as reported by Davies, Al Jazeera used Liam Collins to "help us to investigate doping in sport . . . [by] claiming to be an athlete desperate to qualify for the Rio Olympics."

39.     According to Al Jazeera, Collins—who has no known news reporting training or experience—spent six months traveling to the Bahamas, Canada, and Texas, attempting to make contact with suppliers of performance-enhancing substances.  Falsely claiming to be a potential client, Collins induced various people he came into contact with to discuss the topic of performance-enhancing substances and to provide him with what were purported to be performance-enhancing substances.   Using hidden cameras, Collins secretly recorded these interactions.

40.     Much of "The Dark Side" focuses on Collins' time in Texas, where he made contact with Charles David Sly, falsely described by Davies in the program as a "doctor of pharmacy." (**Exhibit J** at 18:48).

***The Defamatory Statements Contained in "The Dark Side" and the Accompanying Print
Article***

41.     Shortly after their initial meeting, Sly is captured on a concealed camera in
Collins' hotel room in Austin, Texas, offering Collins a steroid called "Delta 2", or "D-2", in
order to help him with his "strength gains."   As part of his sales pitch to Collins, Sly claims,
"There's a bunch of football players who take this, and a bunch of baseball players take it too.  It
was recently added to the MLB banned list." (**Exhibit J** at 19:22).   A voiceover from Davies
further explains: "Major League Baseball added Delta 2 by name, but as a steroid it was already
banned in baseball and football." (**Exhibit J** at 19:28).

42.     Later in the program, Collins returns to Texas for a road trip with Sly.   As
described by Davies in the program:

> Back in Texas, the pharmacist Charlie Sly names more sportsmen he claims are
> linked to Delta 2, in baseball and football.  He says he coached them on what to
> take and how to avoid testing positive.  In a series of conversations crisscrossing
> Texas, we primed Liam [Collins] with questions to dig into the claims.  (**Exhibit
> J** at 35:20).

43.     The video then cuts to a stylized clip of Mr. Howard running the bases in his
Phillies uniform, with a sports announcer's voiceover, "[t]hat is well hit, it is way back, 50 home
runs for Ryan Howard," before the shot comes to rest on a backdrop of a stylized baseball card
of Mr. Howard, with his name appearing in large letters. Against this backdrop, the following
conversation is played while the text of the conversation scrolls across the screen:

> Collins:  So with the likes of Howard, once you've set him off, is there like a
> maintenance thing?
>
> Sly:  He's somebody that you cannot overwhelm with stuff.  You just make sure
> you have everything in bags.  He knows to take stuff twice a day.  Usually I just
> have him like teach it back to me.
>
> Collins:  What did he notice in his hitting?
>
> Sly:  With the D-2?

12

Collins:  Yeah

Sly:  I think maybe just some more explosiveness.  He had a couple of years where he had a ton of home runs.

44.     In addition, in the written news article about "The Dark Side" posted at http://www.aljazeera.com/news/2015/12/dark-side-secrets-sports-dopers-151227133355144.html, (**Exhibit K**), Al Jazeera originally included the defamatory statement that "Sly also named [. . .] Ryan Howard, of the Philadelphia Phillies, raising questions about whether [he] use[s]" human growth hormone.

45.     On December 28, 2015, Al Jazeera changed this sentence to read: "Sly also named [. . .] Ryan Howard, of the Philadelphia Phillies, raising questions about whether [he] use[s] the hormone supplement Delta 2."  In conjunction with this change, Al Jazeera appended a correction notice to its article, stating that an earlier version of the article "reporting" on an allegation about possible links between Mr. Howard and human growth hormone was incorrect, as the substance alleged in Al Jazeera's own program was not human growth hormone but Delta 2.

46.     But for the reference to Mr. Howard's prowess as a home run hitter, all of these statements concerning Mr. Howard are categorically untrue.  Mr. Howard has never taken Delta 2, human growth hormone, or any other steroid or other performance-enhancing substance banned by the MLB.  Mr. Howard has never received any banned substances from Charles David Sly or "taught anything back to" Charles David Sly.  Mr. Howard has never "been coached [by Charles David Sly] on what to take and how to avoid testing positive."  And, contrary to what is implied in the program, Charles David Sly played no part in Mr. Howard's fiftieth home run in 2006 or in any of his many other home runs.

47.     Sly's statements about Mr. Howard, as published by Defendants, are *per se* defamatory, as they falsely accuse Mr. Howard of illegal acts, as well as acts injurious to his professional and business reputation—namely, the taking of illegal and banned performance-enhancing substances.  These remarks are further defamatory in that they falsely suggest that the taking of these illegal and banned substances by Mr. Howard was part of an ongoing "maintenance" plan directed by Sly, and imply that Mr. Howard's career accomplishments, including having "a ton of home runs" and reaching 50 home runs, were the result of taking these substances.

48.     Defendants are well aware that these statements are untrue and defamatory, and have shown reckless disregard for this fact.

### *Defendants Recklessly Disregard All Indicators of Lack of Veracity*

49.     On or about December 9, 2015, Mr. Howard first learned that Al Jazeera planned to run a program accusing him, and others, of taking illegal or banned supplements.  On December 18, 2015, Mr. Howard, through counsel, informed Al Jazeera's counsel that Mr. Howard "unequivocally and emphatically den[ies]" using or having used Delta 2 or any other performance-enhancing substance and that such defamatory claims, if published, would cause Mr. Howard serious reputational and economic injury.  Counsel also noted that Al Jazeera's refusal to identify the lone source of its claims was a barrier to discovery of the truth, writing:

> In an effort to disabuse Al Jazeera of the error of its ways, we asked that you identify the lone individual who allegedly serves as the source of these charges, but you refused to do so. You have also refused to provide us with any information that might lead us to help you understand how it could be that such a falsehood could have been charged of [our client].  Consequently, you have disabled us in our ability to demonstrate that your source is either untrustworthy or just plain wrong, and therefore Al Jazeera will be taking the risk that false and shoddy journalism could have been rectified had not its reporting protocol been grossly irresponsible.

(A true and correct copy of this December 18, 2015 email is attached hereto as **Exhibit M**).

50.     On December 23, 2015, Mr. Howard, through counsel, again wrote to Al Jazeera's counsel, re-affirming that Mr. Howard "unequivocally and emphatically denies that he used Delta 2 or any other performance enhancing drug" and that publication of such claims would amount to defamation, and demanding that "Al Jazeera immediately cease and desist from making false and injurious statements regarding Mr. Howard's alleged use of performance enhancing drugs."  (A true and correct copy of this December 23, 2015 letter is attached hereto as **Exhibit N**).

51.     On December 26, 2015, Mr. Howard learned (from a source other than Defendants) not only that the sole source of the allegations against him were statements made by Sly and relayed to Al Jazeera by Collins, but that ***Sly had unequivocally advised Davies and Al Jazeera's counsel, in writing, that the purported statements were false***.  Accordingly, at 2:49 p.m. on December 26, Mr. Howard, through counsel, once again wrote Al Jazeera's counsel, noting that, in light of the above facts and especially given Collins' reputation as a fraudster and attention-seeker, "[t]here can be no conclusion but that the sources for Al Jazeera's statements regarding Mr. Howard's alleged use of performance enhancing drugs are patently unreliable," and again demanding that Al Jazeera cease and desist from making any such defamatory statements against Mr. Howard.  (A true and correct copy of this December 26, 2015 letter and cover email is attached hereto as **Exhibit O**).

52.     Nonetheless, on this same day, in an obvious ploy to drum up publicity in advance of airing the program, and so increase its ratings, Al Jazeera posted the full program on YouTube and provided The Huffington Post with an advance copy.  At 9:01 p.m. on December 26, 2015,

The Huffington Post published a story relating to "The Dark Side," and embedded in this story not only a link to the video of the full program, but also a video of Sly recanting. (A true and correct video copy of the Sly recantation, **Exhibit P** hereto, is available at the Court's request and the notice of filing is attached hereto); (**Exhibit L**).

53.    In his 55-second long video recantation, Sly clearly states:

> The statements on any recordings or communications that Al Jazeera intends to air are absolutely false and incorrect. To be clear, I am recanting any such statements and there is no truth to any statement of mine that Al Jazeera plans to air. Under no circumstances should any of those statements, communications, or recordings be aired.

In this same article, The Huffington Post further reported that "[i]n a subsequent statement to Al Jazeera, [Sly] walked back the comments even further," although upon information and belief Al Jazeera has not made this subsequent statement public.

54.    Apart from Sly's recantation, other facts known and/or readily available to Al Jazeera suggest the unreliability of Al Jazeera's sole source for the defamatory allegations concerning Mr. Howard.

55.    As Davies herself recognizes in "The Dark Side," the motivations of Collins' "sources" are questionable. Indeed, all references by Sly to professional athletes, whether generally or by name, are in the context of his sales pitch attempting to sell his services, his drugs, and his business to Collins. Following the publication of the piece, a *New York Times* report quickly recognized this obvious issue with source credibility: "Sly and the other characters appear to be slippery sorts, sweaty salesmen in search of another mark." (A true and correct copy of the article found at http://www.nytimes.com/2015/12/28/sports/football/claims-of-peyton-manning-doping-raise-nagging-questions.html?_r=0 is attached hereto as **Exhibit Q**).

56.    In addition, the allegations as to Mr. Howard lack any specificity. "The Dark Side" does not identify when Mr. Howard is alleged to have started taking such performance-

enhancing substances or for how long, or how he received and paid for the drugs.  It does not include any details on when, where, or how Sly supposedly met Mr. Howard or how they communicated with each other.  Despite six months of undercover work, Defendants failed to uncover a single reported piece of evidence corroborating Sly's outlandish claims about Mr. Howard.  The combination of this lack of specificity and utter absence of any corroborating evidence casts further doubt on Sly's credibility.  Yet Al Jazeera published its report despite its inability to gather any corroborating evidence or to answer even the most basic questions underlying the defamatory statements concerning Mr. Howard.

57.     The contradictions as to even easily verifiable facts also cast doubt on the veracity of Sly and his account.  While Davies refers to him as a "doctor of pharmacy" and "pharmacist," and "The Dark Side" credits him with working at the Guyer Institute in Indiana in 2011, public records reveal that in 2011 Sly was not licensed in Indiana as either a doctor of pharmacy or a pharmacist, but rather as a pharmacy intern, and that this license expired on May 1, 2013.  (*See* **Exhibit   R**, a   true   and   correct   copy   of   the   web   page   found   at http://www.indianalicensing.org/charles-david-sly).  And both Sly and Dr. Guyer have stated that Sly was not an employee of the Guyer Institute, but rather a short-term, unpaid intern.  Davies herself has now admitted on *The Today Show* that Sly was at the Guyer Institute only as "part of his training, part of his rotation for pharmacy."  (A true and correct video copy of the Davies interview on *The Today Show*, **Exhibit S** hereto, is available at the Court's request and the notice of filing is attached hereto).

58.     Defendants' own behavior similarly casts doubt on the credibility of the program and Defendants' willingness to uncover the truth.  Already lacking support for the basic "who, where, when, and how" of the story, Al Jazeera could not even remain consistent in its false

reporting of the "what."   In its own news article about "The Dark Side," Al Jazeera originally falsely reported that in "The Dark Side," Sly alleged that Mr. Howard had taken human growth hormone.   On December 28, 2015, Al Jazeera printed a correction admitting that it had ***incorrectly reported on its own story***, and that Sly never claimed that Mr. Howard had taken human growth hormone.  (**Exhibit K**).

59.    Further, in a December 27, 2015 interview on Al Jazeera, Davies admitted that Al Jazeera heard from Sly "48 hours ago" (before either Al Jazeera or The Huffington Post published "The Dark Side") and acknowledged that "Charlie Sly now says that anything he said to us wasn't true."  (A true and correct video copy of the Davies interview on Al Jazeera, **Exhibit T** hereto, is available at the Court's request and the notice of filing is attached hereto).  Davies further admits that Sly is untrustworthy, continuing, "[y]ou have to say, well, is he lying now, was he lying during day upon day upon day of undercover filming, because obviously the two don't square." (*Id*.).

60.    Notwithstanding this awareness of Sly's questionable motivations, the lack of any specific or independently verified facts, the full knowledge that Sly had recanted any and all statements and that his accounts "don't square," Al Jazeera aired "The Dark Side," as scheduled at 9:00 p.m. EST on December 27, 2015.  Further, Al Jazeera has made and continues to make the program and news article available on its website and the program available on YouTube, and has failed to retract any statements made therein.

61.    In addition, Al Jazeera and Davies have continued to aggressively promote "The Dark Side."  On December 27 and 28, 2015, Al Jazeera posted numerous videos of Davies being interviewed by other Al Jazeera reporters about "The Dark Side."  On December 29, 2015, Davies appeared on NBC's *The Today Show* for an interview about "The Dark Side."   In

addition, Al Jazeera and Davies have continued to promote the piece to various other news outlets and publications, including The Huffington Post.

62.     Since publication, Defendants have refused to retract their defamatory statements. On December 28, 2015, Mr. Howard, through counsel, sent Defendants' counsel a retraction letter.  (A true and correct copy of this December 28, 2015 letter is attached hereto as **Exhibit U**).  Defendants' counsel responded on December 30, 2015, refusing to retract the statements.

63.     Defendants have therefore acted with either actual knowledge of falsity or with reckless disregard for the truth or falsity of the defamatory statements.

### *Impact of the Defamatory Statements*

64.     Due to Defendants' defamatory statements, Mr. Howard has been at the center of a media storm speculating as to his alleged use of Delta 2 and other performance-enhancing substances.  Mr. Howard's reputation for honesty, both generally and as a competitor, has been called into question, not only in front of the athletic community, but in front of the public at large.  As a consequence, Mr. Howard has suffered reputational harm that has affected and will continue to affect him both in his main profession—as a professional baseball player—as well as in future sponsorship and other business opportunities, possible induction into the Baseball Hall of Fame, and in charitable pursuits.  The financial impact of this harm on Mr. Howard ultimately will be in the millions of dollars.

### COUNT ONE:  LIBEL
### (Against All Defendants)

65.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 64 with the same force and effect as if fully stated herein.

66.     Defendants published or caused to be published in print and by broadcast defamatory statements of fact and concerning Mr. Howard on Al Jazeera's television station and

website, as well as on YouTube and The Huffington Post's website.

67.     Defendants published or caused to be published the false and defamatory statements of fact and concerning Mr. Howard knowing that such statements would be disseminated throughout the world.

68.     The false and defamatory statements of fact published or caused to be published by Defendants state outright and also carry the unmistakable message that Mr. Howard has taken or is taking illegal performance-enhancing substances, including Delta 2, in contravention of the MLB ban on such substances.  Thus, the false and defamatory statements of fact published by Defendants are libelous *per se* in that they impute criminal conduct to Plaintiff and disparage him in his business and/or profession on their face, and can be so understood without reference to any additional or extrinsic facts.

69.     Those who read or otherwise receive the false and defamatory statements of fact published or caused to be published by Defendants and concerning Mr. Howard understand their defamatory meaning and understand that the statements concern Mr. Howard.

70.     Defendants published or caused to be published the false and defamatory statements concerning Mr. Howard without any applicable privilege.

71.     Defendants published or caused to be published the false and defamatory statements concerning Mr. Howard with knowledge that they were false and/or with reckless disregard for the truth or falsity of the statements.

72.     Evidencing Defendants' knowledge of the falsity of the defamatory statements concerning Mr. Howard and a reckless disregard for the truth or falsity of those statements, Defendants, *inter alia*:

        a.     knew that the motivations of their sole source were questionable;

b.      lacked any details tending to establish the veracity of the source's allegations;

c.      failed to uncover any confirming facts as to these allegations, notwithstanding a purported six-month undercover operation related to same;

d.      refused to further investigate the sole source of these allegations, or to identify said source, despite Mr. Howard's repeated requests prior to publication regarding same; and

e.      knew prior to publication that the sole source of the allegations had recanted these allegations.

73.     As a direct and proximate result of the false and defamatory statements concerning Plaintiff published or caused to be published by Defendants, Mr. Howard has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, professional athlete, and businessman, has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage.

74.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false and defamatory statements concerning Mr. Howard with the specific intent to cause harm to Mr. Howard and in order to boost their own reputations and Al Jazeera's ratings, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, justifying an award of punitive damages.

## COUNT TWO:  FALSE LIGHT INVASION OF PRIVACY
### (Against All Defendants)

75.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 with the same force and effect as if fully stated herein.

21

76.    Defendants published or caused to be published in print and by broadcast untrue statements concerning Mr. Howard on Al Jazeera's television station and website, as well as on YouTube and The Huffington Post's website.

77.    Defendants published or caused to be published such false statements concerning Mr. Howard knowing that such statements would be disseminated throughout the world, and indeed, have taken ongoing steps to promote and disseminate these false statements.

78.    The false statements published or caused to be published by Defendants state outright and also carry the unmistakable message that Mr. Howard has taken or is taking illegal performance-enhancing substances, including Delta 2, in contravention of the MLB ban on such substances.   Such untrue statements place Mr. Howard in a false light highly offensive to a reasonable person, such that anyone who reads or otherwise receives the false statements of fact published or caused to be published by Defendants concerning Mr. Howard understands the untrue statements to imply that Mr. Howard has taken or is taking illegal and banned performance-enhancing substances.

79.    The publications send this message that Mr. Howard has taken or is taking illegal and banned performance-enhancing substances despite the fact that "The Dark Side" contains Sly's retraction of his untrue statements concerning Mr. Howard's use of performance-enhancing substances and despite Mr. Howard's denial of the allegations.

80.    Defendants published or caused to be published the false statements concerning Mr. Howard without any applicable privilege.

81.    Defendants published or caused to be published the false statements concerning Mr. Howard with knowledge that they were false and/or with reckless disregard for the truth or falsity of the statements.

82.     Evidencing Defendants' knowledge of the falsity of the defamatory statements concerning Plaintiff and a reckless disregard for the truth or falsity of those statements, Defendants, *inter alia*:

        a.     knew that the motivations of their sole source were questionable;

        b.     lacked any details tending to establish the veracity of the source's allegations;

        c.     failed to uncover any confirming facts as to these allegations, notwithstanding a purported six-month undercover operation related to same;

        d.     refused to further investigate the sole source of these allegations, or to identify said source, despite Mr. Howard's repeated requests prior to publication regarding same; and

        e.     knew prior to publication that the sole source of the allegations had recanted these allegations.

83.     As a direct and proximate result of the false statements concerning Mr. Howard published or caused to be published by Defendants, Mr. Howard has suffered personal humiliation and mental anguish, permanent damage to his reputation as a person, professional athlete, and businessman, has lost or will lose business opportunities and has suffered or will suffer other pecuniary damage.

84.     Upon information and belief, Defendants published or caused to be published, and have continued to promote, the false statements concerning Mr. Howard with the specific intent to cause harm to Mr. Howard and in order to boost their own reputations and Al Jazeera's ratings, and showing willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, justifying

an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ryan James Howard demands judgment against Defendants as follows:

a.      For general damages in an amount to be determined at trial;

b.      For special damages in an amount to be proven at trial;

c.      For punitive damages in an amount to be proven at trial, but not less than four times the amount of general and special damages combined, to punish and penalize Defendants and deter Defendants from repeating their unlawful conduct;

d.      For an injunction requiring Defendants to remove all false and defamatory statements about Plaintiff from any and all websites, including Al Jazeera's website and YouTube;

e.      For an injunction requiring Defendants to publish a retraction of all false and defamatory statements about Plaintiff in the *New York Times* or a similar newspaper with nationwide distribution;

f.      For attorneys' costs and fees incurred by Plaintiff in this action; and

g.      For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Ryan James Howard hereby demands trial by jury.


Respectfully submitted,

MILLER & CHEVALIER CHARTERED


Dated: January 5, 2016
      Washington, D.C.

/s/ Andrew D. Herman
_____

Andrew D. Herman
DC Bar # 462334
aherman@milchev.com
655 Fifteenth Street NW, Suite 900
Washington, D.C. 20005
(202) 626-5800 (tel.)
(202) 626-5801 (fax.)

*Attorney for Plaintiff Ryan James Howard*