**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RYAN JAMES HOWARD
    Plaintiff,

                v.

AL JAZEERA AMERICA, LLC, AL JAZEERA
MEDIA NETWORK,  AL JAZEERA
INTERNATIONAL (USA) INC.,  LIAM
JAMES COLLINS, and DEBORAH DAVIES,
    Defendants.

Case No. 1:16-cv-14-KBJ


**DEFENDANTS AL JAZEERA MEDIA NETWORK,
AL JAZEERA INTERNATIONAL (USA), INC., AL JAZEERA AMERICA, LLC,
AND DEBORAH DAVIES' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

                                                                                                    **Page**

ARGUMENT ................................................................................................................................. 1

I.     THE DOCUMENTARY AS A WHOLE IS NOT REASONABLY CAPABLE OF THE DEFAMATORY MEANING ALLEGED BY PLAINTIFF AND DEFENDANTS HAVE NOT MADE ANY FALSE STATEMENT OF FACT .............. 1

II.    PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD THE REQUIRED ELEMENT OF ACTUAL MALICE ................................................................................. 4

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbas v. Foreign Policy Grp., LLC,*
   975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd on other grounds*, 783 F.3d 1328 (D.C. Cir. 2015) ................................................................................................................................. 2, 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................................. 4

*Chapin v. Knight-Ridder, Inc. Guilford,*
   993 F.2d 1087 (4th Cir. 1993) ................................................................................................. 3

*Farah v. Esquire Magazine,*
   736 F.3d 528 (D.C. Cir. 2013) ................................................................................................ 1

*Guilford Transportation Indus. v. Wilner,*
   760 A.2d 580 (D.C. 2000) ....................................................................................................... 2

*Harte–Hanks Commc'ns v. Connaughton,*
   491 U.S. 657 (1989) ............................................................................................................ 5, 6

*Jankovic v. Int'l Crisis Group,*
   No. 14-7171, 14-7178, 2016 WL 2640526 (D.C. Cir. May 10, 2016) .............................. 4, 5, 6

*Kidder v. Anderson,*
   354 So. 2d 1306 (La. 1978) ..................................................................................................... 7

*Lohrenz v. Donnelly,*
   350 F.3d 1272 (D.C. Cir. 2003) ........................................................................................... 4, 8

*McFarlane v. Esquire Magazine,*
   74 F.3d 1296 (D.C. Cir. 1996) .............................................................................................. 6, 8

*Parnigoni v. St. Columba's Nursery School,*
   681 F. Supp. 2d 1 (D.D.C. 2010) ............................................................................................. 1

*Perk v. Reader's Digest Ass'n, Inc.,*
   931 F.2d 408 (6th Cir. 1991) ................................................................................................... 6

*Premier Growth Fund v. Alliance Capital Mgmt.,*
   435 F.3d 396 (3d Cir. 2006) ..................................................................................................... 5

*Reuber v. Food Chem. News, Inc.,*
   925 F.2d 703 (4th Cir. 1991) (en banc) ................................................................................... 7

*St. Amant v Thompson*,
   390 U.S. 727 (1968) .................................................................................................. 4, 5, 7

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) (en banc) ............................................................................ 6

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2009) ............................................................................................. 5

*White v. Fraternal Order of Police,*
   909 F.2d 512 (D.C. Cir. 1990) ........................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 9

Robert D. Sack, Sack on Defamation § 5:5.2 ........................................................................... 7

**ARGUMENT**

I. **THE DOCUMENTARY AS A WHOLE IS NOT REASONABLY CAPABLE OF THE DEFAMATORY MEANING ALLEGED BY PLAINTIFF AND DEFENDANTS HAVE NOT MADE ANY FALSE STATEMENT OF FACT**

In any defamation claim, the plaintiff must plausibly plead that the defendant made a statement about the plaintiff that is both false and defamatory. It is a threshold matter for the Court to decide whether the challenged statement is (1) an assertion of fact, (2) made by the defendant, which a "reasonable reader" may conclude has (3) defamatory meaning. *Parnigoni v. St. Columba's Nursery School*, 681 F. Supp. 2d 1, 14 (D.D.C. 2010). Failure on any one of these three elements requires dismissal of the complaint.

The Court's threshold defamatory meaning analysis is made from the perspective of the "reasonable reader" (or in this case, "reasonable viewer"). This is a single "hypothetical" viewer who considers the challenged words in the context of an entire broadcast and reflects on what she sees or hears. *Farah v. Esquire Magazine*, 736 F.3d 528, 537 (D.C. Cir. 2013). She does not leap to unreasonable or strained conclusions or mistake reports or opinions for factual statements, even if some actual readers might. This objective and focused standard is necessary in order to provide the "breathing space" for journalism that the First Amendment requires. *Id*.

Plaintiff incorrectly asserts that there is a *range* of "reasonable viewers," and that the Court must rule in his favor unless it can say "with positive assurance that no reasonable person watching the documentary. . . could have understood Defendants to be accusing Howard of having taken performance enhancing drugs." (Pl. Br. at 15.) This is wrong: liability is not tested by the reactions of the most credulous or undiscerning. The threshold analysis of a statement does not follow "far-fetched interpretations of the challenged publication" and is not "interpreted by extremes, but [is] construed as the average or common mind would naturally understand [it]."

1

*Guilford Transportation Indus. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000).  In other words, there is only one "reasonable viewer."

The reasonable viewer would consider the statement about Plaintiff in the context of the entire Documentary.  She would observe that the only accusation made against Plaintiff is by Sly, a third party clearly not under Al Jazeera's control; that professionals who supply PES to athletes are the central subject of the Documentary, not Plaintiff or other athletes; that Al Jazeera does not endorse any of Sly's statements but repeatedly states that they are only what he has "claimed" or "said"; that Al Jazeera notes only that Sly's statements "raise[] questions" about the athletes he identified (see Def. Br. at 22-23); that Al Jazeera fully reported that Plaintiff "emphatically denies" the accusation and that Sly had recanted all of his statements; and that Al Jazeera draws no conclusions about any athlete's PES use, stating at the end of the Documentary only that the investigation proves there are "plenty of doctors and chemists taking doping to a whole new level."  (Deutsch Decl., Ex. A at 35; FAC Ex. L at 37:09.)  Given this context, the reasonable viewer would not conclude that Al Jazeera endorses or adopts Sly's assertion that Plaintiff uses PES.

Plaintiff's argument ignores *Abbas v. Foreign Policy Grp., LLC,* 975 F. Supp. 2d 1, 7-8 (D.D.C. 2013), *aff'd on other grounds*, 783 F.3d 1328 (D.C. Cir. 2015), and many other federal decisions that have found that a publisher's unendorsed reports of another's accusations are not statements of fact by the publisher when read in context.[1]  (See Def. Br. at 21-23.)  Like the defendant in *Abbas*, Al Jazeera was not making "an assertion of false fact, or indeed of *any fact*

---

[1] In a footnote, Plaintiff mentions a different issue addressed in *Abbas*: whether asking questions in a publication could be deemed an assertion of fact and therefore actionable. (Pl. Br. at 17 n.4.) The district court found that asking questions cannot be defamatory and the D.C. Circuit affirmed this conclusion. However, the germane portion of the district court's decision was its holding about a separate portion of the article, in which the author repeated the statements of certain Palestinians about the Abbas family and noted that these raised serious questions. *Abbas* found that repetition of the third-party statements was not an assertion of fact by the author, and was therefore not actionable. (See Def. Br. at 21-23.) Plaintiff's brief is utterly silent about this relevant holding.

[, but] . . . reporting on what [Sly] . . . said. . ., and does not otherwise take any position on what he has heard." *Abbas*, 975 F. Supp. 2d at 19 (emphasis in original).

Having failed to put Sly's words in Al Jazeera's mouth, Plaintiff then argues that Al Jazeera is still responsible for those words because it did not frontally attack his credibility. He contends that Al Jazeera "tried to convince the viewer" that Sly was credible. However, he bases this assertion solely on the Documentary's use of hidden camera footage showing Sly going about his business as a supplier of PES: giving PES to Collins and to MLB player Taylor Teagarden, making statements to Collins about PES that were corroborated by experts, and so forth. (Pl. Br. at 16.) No authority is cited to support the contention that defamation liability can be imposed because a documentary shows a source's actual activities. More importantly, the contention is dangerous to First Amendment freedoms. An enormous amount of protected speech would be chilled if a reporter faced liability for conveying a source's newsworthy statements about a public figure plaintiff because the reporter showed footage of the source "in action" or because the reporter did not actively undermine the source's credibility.

At bottom, Plaintiff appears to be arguing for some kind of libel by implication, even though nothing in the broadcast shows that Al Jazeera endorsed Sly's statement about Plaintiff. Beyond the fact that the reasonable viewer would not infer any endorsement from the Documentary, claims of libel by implication are disfavored and impose an "especially rigorous showing" on a public figure plaintiff. *Chapin v. Knight-Ridder, Inc. Guilford*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) (the language must "not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference") (citing *White v. Fraternal Order of Police,* 909 F.2d 512, 520 (D.C. Cir. 1990)).

3

There is nothing in the Documentary that "affirmatively suggest[s]" that Al Jazeera endorsed Sly's statement about Plaintiff.

As Plaintiff fails to plausibly plead that Defendant made a false statement of fact about Defendant that has defamatory meaning, his defamation claim is inadequate as a matter of law and should be dismissed.

## II. PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD THE REQUIRED ELEMENT OF ACTUAL MALICE

The actual malice discussion in Plaintiff's brief is simply a rehash of the allegations of his First Amended Complaint ("FAC").  As shown in Defendants' moving brief, none of these allegations permit a plausible inference that Al Jazeera knew that Sly's statement about Plaintiff was false or that it saw obvious reasons to doubt the statement.  Plaintiff makes many conclusory statements in his brief, but, just like the similar conclusions asserted in the FAC, he has not cited any facts that would "nudge [Plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As shown in Defendants' opening brief (Def. Br. at 26), *St. Amant v Thompson*, 390 U.S. 727, 732 (1968), identified several limited categories where allegations of objective facts may permit an inference that the defendant harbored serious subjective doubts as to the truth of the statement in litigation.  The D.C. Circuit has adopted and consistently applied the *St. Amant* categories.  *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003); *Jankovic v. Int'l Crisis Group*, No. 14-7171, 14-7178, 2016 WL 2640526, at *8 (D.C. Cir. May 10, 2016).[2]

Plaintiff has failed to show that the FAC's factual allegations permit an inference of actual malice under any of the *St. Amant* categories.  He does not contend that Al Jazeera itself

---

[2] After Defendants filed their moving brief (but before Plaintiff filed his opposition brief), the D.C. Circuit issued its decision in *Jankovic*, which reaffirmed its precedents and provided further guidance in applying the law of actual malice.  Strangely, Plaintiff has failed to even mention this significant new precedent (although he did cite an earlier D.C. Circuit decision in the same case).

4

"fabricated" the statements about Plaintiff or that the Documentary was based on an "unverified anonymous telephone call" (presumably because Sly's statements about Plaintiff were captured on hidden camera).  *See St. Amant*, 390 U.S. at 732.

Plaintiff does appear to assert, without any factual support, that the allegations about him were "inherently improbable." (Pl. Br. at 19 (terming Sly's statements "outlandish").)  *See St. Amant*, 390 U.S. at 732.  However, this assertion is controverted by the many news stories published or broadcast prior to the Documentary, in which professional athletes were disciplined for PES use, or where they originally denied reports that they had used PES, but were later compelled to acknowledge the truth of the accusations or were shown to have used PES. (Def. Br. at 9-10, 35-36.)  The Court is entitled to take judicial notice of these stories because they are relevant and are not being offered for their truth, but to show what reporters would have been aware of before the Documentary was broadcast.  "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.,* 435 F.3d 396, 401 n. 15 (3d Cir. 2006)).  Given the existing reports of hundreds of professional athletes involved in PES use, Sly's statement that Plaintiff was also a PES user would not have appeared "inherently improbable" to any journalist.

Plaintiff repeats the FAC's allegation that Al Jazeera was motivated to generate a sensational story because Al Jazeera America had poor ratings. (Pl. Br. at 20-21.)  But a publisher's motive for running a story is simply not evidence of actual malice.  *Jankovic*, 2016 WL 2640526 at *9.  The U.S. Supreme Court reached the same conclusion in its earlier decision, *Harte–Hanks Commc'ns v. Connaughton,* 491 U.S. 657, 665 (1989)  ("[A] newspaper's motive

5

in publishing a story—whether to promote an opponent's candidacy or to increase its circulation—cannot provide a sufficient basis for finding actual malice."). *See also Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) (en banc) (assertion that reporters were under pressure by editor to create sensationalistic stories "cannot, as a matter of law, constitute evidence of actual malice").

Plaintiff also repeats, now in the form of an argument, the FAC's allegation that Al Jazeera did not investigate or corroborate Sly's statement about Plaintiff. (Pl. Br. at 20.) But *Janvokic* and earlier D.C. Circuit case law make clear that a reporter has no duty to corroborate a statement believed to be true:

> [O]nly when a plaintiff offers evidence that 'a defendant has reason to doubt the veracity of its source' does 'its utter failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story' demonstrate reckless disregard. Absent such concerns, the defendant has no duty to corroborate the defamatory allegation.

*Jankovic,* 2016 WL 2640526 at *9 (quoting *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1309 (D.C. Cir. 1996)).[3]

Plaintiff points to an alleged inaccuracy in the Documentary about the position held by Sly at the Guyer Institute. Plaintiff claims that Al Jazeera could have discovered that Sly had a lesser position at the Guyer Institute had it checked. (Pl. Br. at 20.) However, as already shown in Defendants' moving brief (Def. Br. at 34-35), this minor inaccuracy does not further Plaintiff's duty to plausibly allege actual malice. Neither Sly nor Al Jazeera claimed in the Documentary that Sly met or worked with *Plaintiff* through the Guyer Institute. Discovering this

---

[3] In *Perk v. Reader's Digest Ass'n, Inc.*, 931 F.2d 408 (6th Cir. 1991), cited by Plaintiff at Pl. Br. 21, the Sixth Circuit affirmed a grant of summary judgment of dismissal because the plaintiff could not show evidence of actual malice. *Perk* distinguished the facts in *Harte-Hanks* as involving a situation "in which the newspaper's own sources indicated that there was a question as to the truth of what they were reporting, and that a readily available additional source would provide proof of whether their story was accurate. [Here], there is little or nothing in appellees' sources to indicate to them that their sources were inaccurate on these issues." *Id.* at 412.

irrelevant inaccuracy would not have given Al Jazeera "obvious reasons" to doubt the truth of Sly's statement about *Plaintiff* and thereby imposed a duty to further investigate. *St. Amant*, 390 U.S. at 732.

Plaintiff finally contends that Defendants had "an obvious reason" to doubt Sly's veracity because Sly (1) was "engaged in an illegal business," (2) "could not advertise through legitimate means," (3) believed Collins to be a potential customer "who could significantly expand the scope of his business," and (4) did not know he was being recorded. (Pl. Br. at 19.) Once again, Plaintiff cites no prior decision in which similar facts were found to be an obvious indicator of untruth and to impose a duty on a reporter to further investigate or corroborate a source's statement.

Unpacking Plaintiff's assertion shows its poverty. First, there is no obvious reason for a reporter to disbelieve a source just because the source is engaged in an illegal or shady business that cannot be advertised. "Sources need not be paragons of virtue for journalists safely to rely on them." Robert D. Sack, Sack on Defamation § 5:5.2, p 5-107; *Kidder v. Anderson*, 354 So. 2d 1306, 1309 (La. 1978) (reporter investigating corruption entitled to rely on statements of gamblers and barmaids who said that they bribed police officers). Second, the fact that a source may have an interest does not make him unbelievable. As the Fourth Circuit said in its en banc decision in *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 715 (4th Cir. 1991) (en banc), "[a]ctual malice cannot be proven simply because a source of information might also have provided the information to further the source's self-interest." Although *Reuber* was cited at Def. Br. at 37, Plaintiff's opposition brief does not even mention the decision, much less cite any contrary authority.

7

Third, common sense tells us that someone engaged in illegal activity is more likely to tell the truth when he does *not* know that he is being recorded and is speaking to someone he believes to be a confidante. Many criminal investigations, in which one participant is wired for sound or video by authorities, lead to successful prosecutions based on the recorded evidence because felons let their guard down and speak freely when they think no one in authority is listening in. The fact that the criminal may claim that everything he said in a recording was a lie when his activities are exposed is no indication that he was lying before the exposure.[4]

Finally, Plaintiff completely ignores the aspects of the Documentary that actively negate the contention that Defendants acted with actual malice. These include Al Jazeera's reporting that Plaintiff "emphatically denied" Sly's claim and that Sly had recanted his recorded statements (even if Defendants did not believe that the recantation was sincere). *Lohrenz*, 350 F.3d at 1286 ("[R]eporting perspectives at odds with the publisher's own, "tend[] to rebut a claim of malice, not to establish one.'") (citing *McFarlane*, 74 F.3d at 1304). (See Def. Br. at 37-38.)

In short, Plaintiff has failed to allege any facts in his FAC, or point to anything said or shown in the Documentary, that plausibly suggest that Defendants actually believed that Sly's statement about Plaintiff was false, or entertained serious doubts as to the statement's truth. As the First Amendment requires in such circumstances, the Court should dismiss the complaint for failure to plead actual malice.

---

[4] The Court may take judicial notice that as a result of the Al Jazeera Documentary, the NFL has undertaken a full investigation of the professional football players who were named by Sly as having used PES. In a letter to the NFL Players Union that specifically addressed Sly's alleged recantation of his recorded statements, the NFL's representative said "[I]t is hardly remarkable or dispositive that an individual would publicly disavow statements for which he may be subject to criminal or civil sanctions." See ESPN.com, "NFL, NFLPA at odds over 'credible evidence' in Al-Jazeera report," available at http://espn.go.com/nfl/story/_/id/16651816/nfl-pursuing-investigation-al-jazeera-report-nflpa-asking-credible-evidence (last checked July 5, 2016).

## CONCLUSION

For the reasons set forth above and in Defendants' moving papers, the Court should grant an order pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the First Amended Complaint with prejudice.

Dated: July 7, 2016

                         Respectfully submitted,

                         /s/ *Andrew L. Deutsch*
                         Anthony Gill
                         DLA PIPER LLP
                         500 Eighth Street, NW
                         Washington, DC 20004
                         Office: (202) 799-4562
                         Fax: (202) 799-5562
                         anthony.gill@dlapiper.com

                         Andrew L. Deutsch *(admitted pro hac vice)*
                         Rachel Stevens *(admitted pro hac vice)*
                         DLA PIPER LLP
                         1251 Avenue of the Americas
                         New York, NY 10020
                         Office: (212) 335-4500
                         Fax: (212) 335-4501
                         andrew.deutsch@dlapiper.com
                         rachel.stevens@dlapiper.com

                         Charles Scheeler
                         DLA PIPER LLP
                         The Marbury Building
                         6225 Smith Avenue
                         Baltimore, MD 21209-3600
                         Phone: (410) 580-3000
                         Fax: (410) 580-3001
                         charles.scheeler@dlapiper.com

                         *Counsel for Al Jazeera America, LLC,*
                         *Al Jazeera Media Network, Al Jazeera*
                         *International (USA), Inc., and*
                         *Deborah Davies*